Yes, Your Honor. My name is Debbie Leonard on behalf of Appellant Terry Pham. I will be taking the first five minutes, and Mr. Goodhart will be taking the next five minutes on behalf of Debra Klar, and then I will do a collective rebuttal of five minutes. Okay. We'll keep your eye on the clock. It counts down. Absolutely. Okay. Thank you. May it please the Court? As a preliminary matter, Mr. Flynn has raised a jurisdictional challenge in his answering brief, and I am prepared to address that issue, meaning the jurisdiction of this Court. I'm prepared to address that issue if the Court should wish. Otherwise, I can move on to the substance of our appeal. I'm speaking only for myself. I'm okay on that issue.  Very well. Thank you. Okay. So there are two issues on appeal, and they deal with the balance between the legislative and the judiciary branches of the government. The first is, did the district judge erroneously relinquish its Article III powers to a magistrate judge and thereby increase the powers of the magistrate judge beyond those which Congress conferred? What's the nature of the consent, if any, in this case, to have it be in front of the magistrate judge? Your Honor, there was no consent in this case. None of the parties consented. And with regard to my client, Terry Pham, she – the district judge ruled that she didn't have any notice of the sanctions procedure. I understand that. No, I'm asking solely about the consent, because if there were consent, that changes the nature of the case. Okay. Right, Your Honor. My only point being that because she didn't have any notice, she couldn't have consented to that which she didn't have notice of. Well, but the notice question was more of what was at stake in the particular hearing rather than consent. But I understand. Okay. So your position is no consent. Got it. Okay. Great. And on that matter, the U.S. District Court in Nevada uses specific forms, and none of those were ever submitted to the court. Yeah. And if Mr. Flint disagrees, I guess he can say so. Yeah. Okay. So initially, I think the Court can look at this matter within the framework of the Bigham case, which is precedent in this Court, that states specifically that magistrate judges are creatures of statute. They're not Article III judges. Their powers are conferred by Congress. And so you have to look to the four corners of Section 636 to determine what their powers are. And the — and also follow rules of statutory construction, specifically making sure that you don't abut into constitutional issues. And that is the Gomez case where it says if you can interpret a statute in a manner that doesn't implicate constitutional issues, you should do that. And I think that that is precisely what needs to happen here. Let me ask you at least a piece of what's at issue in front of us. If the only thing that the magistrate judge had been asked to do by the district court judge was to assess the availability and, if available, the amount of attorneys' fees and costs under 1927, would the magistrate judge have the authority to do that? Your Honor, I would say the answer to that is no. And I think that looking at it from the effect of — well, you can look at it from the estate of Connors case, which dealt with a motion for attorneys' fees and, in fact, said that those are dispositive, and therefore, at most, the magistrate judge could do a report and recommendation that had to be — How are those dispositive of the case, though? Well, they're dispositive with regard to the — my client, and they're dispositive in the sense that they will result in a final judgment against my client. That's separate and apart from the merits. It's separate and apart from the underlying claims and the action. And I think that the estate of Connors case says that those are dispositive. Does that case say that a referral of attorneys — of the amount of attorneys' fees would be dispositive? That's a post-judgment motion for attorneys' fees case, if I'm remembering. Well, this case, when it was referred, it was not post-judgment. I agree with you, Your Honor, at that time. And I think that the language in that, in the estate of Connors, says that the magistrate judge can't issue a post-judgment order. And so — Okay. The first order was not post-judgment, though. That's — I think you're mixing the two orders. The first judgment was not post — the first order was not post-judgment. The magistrate judge's order came at a time, as I understand it, that it was after the parties had already settled the case. The first order that went to the district court judge and that was remanded back, that first order, was that after settlement? That was my understanding, yes. I didn't read the record that way, but perhaps I'm wrong. I have to go back and check. But I think the important thing now is that the district judge has also said there hasn't been any — my client didn't get any notice and you've got to go back and start over again. So starting now, absolutely, there's been judgment. I agree. I agree with that. I'm not sure that I agree with you that at the time it was first referred to the magistrate judge, that it was outside the magistrate judge's authority because it was pre-judgment. And 636 does talk about pre-judgment matters. Well, I think looking at — Pre-trial matters, I should say. I think the important thing is to look at the nature of these sanctions that they were — the magistrate judge said absolutely — said unequivocally she was doing this because the attorneys acted in contempt of the court's orders. She said these are contempt sanctions. So I think with regard to the post-judgment pre-trial — No, putting to one side the word about contempt, I'm asking you not about contempt. I'm asking you about attorneys' fees. And there may be contemptuous behavior that also produces a ground for attorneys' fees. But I'm focusing on 1927, which is not contempt. It is attorneys' fees. Right. I understand that. And I think that looking at the post-trial, pre-trial matter is one thing, but also looking at the dispositive versus nondispositive. And with regard to dispositive — with regard to the attorneys' fees, I think they are dispositive of the issue that could result in a judgment against my client. And I see that my time — to give some time to Mr. Goodhart, and then I will save some for rebuttal. Okay. Thank you. Good morning. May it please the Court. I'm Gary Goodhart. I represent Deborah Clark. And I will do my best not to be repetitive of what Ms. Leonard has just said. Let me address first the issue of consent, which Your Honor has raised. Both Civil Rule 73 and 633C lay out procedures for how parties consent to a magistrate handling the disposition of a case. Those procedures were not followed here. There was no consent. There was no consent not only by the parties, but neither of these non-party lawyers consented as well. Because 636 limits a magistrate judge's authority to rule over contempt issues, her authority is looked at very carefully. In this case, there was no summary criminal contempt authority because the acts that she identified as contemptuous did not occur in her presence. They were the various proceedings, the three proceedings and other fora. What if we looked at this just as an attorney's fee request for under 1927? As Judge Fletcher had asked, what's your response to that? My response is this. The motion for sanctions filed by Mr. Flynn requested attorney's fees. That's correct. It also requested other relief, although it did not request all the relief that the magistrate judge granted. We think when you look at the magistrate judge's language, at the tone and tenor of the sanctions order and the severity of the penalties assessed, there's no doubt that these were punishments for contempt. We're not reviewing the magistrate judge's order. We're reviewing the remand by the district judge. Correct. And my question to you is, if the district judge simply remanded for a determination of attorney's fees, should they be available, and if available, in what amount under 1927, would that be permissible? In my view, if the district judge remands this matter to the magistrate judge, given what has occurred, he has to do so with instructions to her that if, as you did, you find acts that constitute contempt, then under 636 you have to certify those facts to me. I'm not asking about contempt. I'm asking about attorney's fees under 1927 and only about attorney's fees under 1927. If the district judge in the remand order were to say, not what he did say, but were to say, I remand for a valuation of the availability of attorney's fees under 1927, and if available, amount, my question to you is, is that something that the district judge could do? Under 1927, the relief is limited to fees, and I believe it is something that the district judge could do. In other words, you disagree with your co-counsel? It's not that I disagree with my co-counsel. It's the nature of what has occurred in this case makes that, in my view, virtually impossible. I see. Because some other things have been tainted? I don't think you can unring this bell. Well, why not? If we remanded the matter back to the district court with instructions that it remanded the matter to the magistrate judge if it desires, I mean, the district court judge could always make this rule in itself. But if the district court wants to remand it back to the magistrate judge, it would be limited solely to a determination of attorney's fees and the amount. And any other disciplinary matters would have to be determined by the district court judge. Why wouldn't that work? In my view, that would be the remand of what in this case is a dispositive matter. Ms. Leonard was correct. At the time the sanctions order was issued, the underlying case had been resolved. So the only thing pending in this was the issue between the attorneys. So under 1927, that would be a dispositive matter, and as a dispositive matter, a magistrate judge has the authority to make a report and recommendations, but the district judge is then required to review it de novo. Our problem with that the premise that it was sent to the magistrate judge in the first instance, though, for the magistrate judge to report back to the district court judge, right? I think it was not sent that way. I think the record is silent as to that, by the way. There is nothing in the record that I'm aware of where the district court judge sent this to the magistrate judge with a request or an order that there be a recommendation back. It had to be if there weren't consent in the District of Nevada. If there is no consent, the default is it's a reported recommendation and goes to the district court judge. Otherwise, it would have never been back to the district court judge for review. That is exactly our position, that there was no consent, and yet the magistrate judge went beyond her jurisdiction by ruling on these matters, by not making a report or recommendation to the district judge. But wasn't it a de facto report and recommendation because it went to the district court judge? Otherwise, why would it go to the district court judge for further review? If it were to be decided finally by the magistrate judge, it would have never gone to the district court judge for review. But the district court judge gave the order deference. He looked at it not as a dispositive matter that he has to review de novo. He looked at it under the clearly erroneous standard. And essentially, the Article III judge gave deference to the Article I judge on these issues that we contend amounted to serious criminal contempt. You know, realistically, if we were to say that the magistrate judge had authority to determine attorneys' fees under 1927, and the district judge reviews it de novo or the district judge reviews it deferentially, I know what the answer is. I mean, I know the answer the district judge would give. Now, that's not sure that I know the answer the district judge would give as to the other sanctions. But as to fees, I'm pretty sure I know the answer, and I don't think the standard review is going to make any difference. I understand the point. That issue is all tied up, of course, in the fact that what happened, what historically happened in this case, is tied up in Judge Pro's order about lack of notice. And so our position is that even if the sanctions hearing were just related to 1927 attorneys' fees the next time around, because of the notice delinquencies, my client, at least, is going to have an opportunity to present evidence at that hearing which didn't happen the first time. Now, we've taken you over the time that you wanted to be taken over. We'll make sure you have enough time for rebuttal. Okay. May it please the Court. The Court, having said that it was okay with the jurisdictional issue, raises a question. I suppose the inference is that the Court is inclined, particularly having in mind that this Court wrote the Osband opinion, to accept the collateral appeal order doctrine. And I would simply point out that I wrote a lot of collateral order opinions, some of which the Supreme Court has disagreed with in no uncertain terms. Although, luckily for me, they were reversing somebody else instead of me. It does raise – we didn't file a motion to dismiss, nor did the – and we went through with the full appellate briefing, because we think it is important for the Court to respond to the issues that are raised. But I would simply point out that the Ninth Circuit has already decided whether the collateral order, appeals order, applies to this case. And that's in the Stanley v. Woodford case, in which they specifically addressed issues on that doctrine in under 1927 and the Court's inherent power to impose sanctions on an attorney and deny appellate review under the collateral appellate doctrine. And in that case, the Court specifically said, and this was after applying Cunningham, the Cunningham case before the United States Supreme Court, the precedential effect of Cunningham is clear. We now expressly interpret Cunningham as extending to sanctions under 1927 and a district court's inherent power and overrule prior conflicting cases. Accordingly, this Court lacks jurisdiction to entertain Levitt's interlocutory appeal. And that was about $10,000 of sanctions imposed on this attorney Levitt in that case. So I sort of find myself in a little bit of a box, because we do want the Court to decide this issue, and that's why we didn't file a motion to dismiss. But there is a significant issue in our mind with regard to appellate jurisdiction. Roberts. So what's the language in Stanley, Stanley v. Woodford, that you say supports your position? That was a habeas case. No, that's an attorney's fees case. It was a capital habeas case, correct, Your Honor. So what language are you relying on? I'm relying on the conclusion at the end of the case. Well, you know we need some analysis, too. Right. This is after an analysis of whether or not the collateral appeals doctrine applied, and then the Court entered the conclusion right at the very end of the case, and then it said dismiss for lack of jurisdiction. So I think there is an issue. But as I said, we invite the Court to, particularly on the attorney's fees component of Section 1927, to decide whether a magistrate judge has authority. We believe that this case is important because in the current environment of litigation, and I've been litigating for 40 years in most parts of the United States, there is an epidemic of lying and deception that is happening in the district courts. And notwithstanding what's been said in the appellate briefs, the appellant's briefs, there was an epidemic of lying and deception before Judge Cook. And she specifically noted that at the excerpts of the record in her report. You know, that gets into the – I mean, that's irrelevant to what's in front of us. Well, the issue is whether or not, Your Honor, that some of this conduct appeared in the presence of the magistrate. And does the magistrate have authority to deal with this type of conduct in her presence? And we submit that both the Stanley case, the Grimes case, and the Masonville case all say that the magistrate judge has the authority to deal with conduct like this. It's obvious that if the litigant in front of the magistrate judge thumbs his or her nose at the magistrate judge, that is contempt in front of the magistrate judge. But here, what happened and what formed the basis for the magistrate judge's justification for, I'm not saying attorney's fees, but rather the other sanctions, disqualification for pro hack vici for five years, community service, and so on, that was largely based on things that did not happen in front of her. It was largely based on what happened in California, largely based on what happened in Massachusetts, not in front of her. Am I wrong? Yes, Your Honor. I respectfully disagree. The essence of the entire pattern of misconduct that started with a perjury declaration  was designed to wrest jurisdiction away from Judge Cook. Now, do you want an order from us that says that the magistrate judge has power to punish only the contempt that occurred in front of her and any other contempt that did not occur in front of her is not in front of the magistrate judge? Because I'm not willing to say that this is such a total package that the magistrate judge has the power to punish all contempt, whether it occurred in front of her or not. Not contempt, Your Honor. These were sanctions under 1927 inherent power. We are not seeking the law. Well, pardon me. You're not seeking what? We're not seeking any orders from this Court with regard to the contempt power or lack of contempt power. Well, what do you do? How do you characterize, then, the no pro hack vici, the community service, the publication of the orders? Those are not attorney's fees. Correct, Your Honor. Those are not. How do you characterize those? Or do you not? Are you waiving those? You don't want those now. No, I'm not waiving them, Your Honor. Although I think that they're not in the nature of contempt sanctions. I think, similar to the standard. What are they, then? They're sanctions for, under the inherent power of the Court, for conduct that took place in front of the Court, which is referenced at the excerpts of the record, Volume I under FAM, at page 82 of Judge Cook's order. Pursuant to what authority, though? Pursuant to the inherent power of the Court. I think the Court, the Ninth Circuit really needs to deal with, and this is why we didn't file a motion to dismiss, it needs to deal with conduct in front of these magistrate judges where they just completely ignore court orders. They just, in this case, they basically, in bad faith, developed an entire scorched earth litigation practice, which went on for a year after our withdrawal, which is all referenced by Judge Cook at excerpts of the record, Volume 182. But you do that by imposing attorney's fees for the amount of time that the opposing counsel spent challenging those, because the statutes are pretty clear as to what the authority is for the district court to impose sanctions. In the Stanley v. Woodford. Or the magistrate judge to impose sanctions. Correct, Your Honor. In the Stanley v. Woodford case, the Court basically prohibited Mr. Levitt from filing further appearances for the habeas petitioner in that case, which is a form, a similar form to what Judge Cook did. It's a thorny issue. After the attorney's fees issue, it's admittedly a more thorny issue. But that raises the issue of whether the appeal should even be up here at this point in time, because if the Court really got into the record of what happened here, what is fleshed out in the record is pretty plain. It almost all happened in front of Magistrate Cook. And she was confronted with a year of just Ms. Clower and Ms. Pham ignoring her orders and implementing the Scorched Earth Law. It seemed like all, I mean, none of the parties really comported themselves in the most collegial way in the Court.  So I think there's enough aspersions to go around in this case. But the question becomes whether or not the magistrate judge had the authority to address the issues. The district court judge could have easily addressed all of these issues. Yes, Your Honor. And with regard to the issue of consent, and the Court was correct, Judge Rawlinson was correct when it raised the issue of the Court's, the motions for sanctions being filed prior to settlement. The evidentiary hearing taking place prior to settlement. Of course, you're issuing the orders prior to settlement. It's just that the sanctions order itself came after the settlement. But then, as pointed out in the supplemental record, which we added, signed by both Judge Cook and by Judge Proe. And that's in the supplemental record at page 33. The parties agreed, both, all the parties to the settlement agreed that the Court would retain jurisdiction over the motions. That doesn't help you, though, because these particular defendants weren't part of that settlement order. True. They didn't agree to that. That's correct, Your Honor. Ms. Pham and Ms. Klar had already been apparently fired by the liner firm. But the point being is that the Court would, the parties that were still before the Court, and the, and I believe the Pro Hoc Deci admissions of Ms. Pham and Ms. Klar were both in place at the time that that order was signed, in September of 08. But that, but even the district court judge said they didn't have notice of the sanctions motion, and so I don't know that that helps you very much. Well, in that point, Your Honor, I'd say that they, Ms. Pham and Ms. Klar filed affidavits in opposition to the motion for sanctions. They filed briefing in opposition to the motion for sanctions. They both appeared at the evidentiary hearing on June 20, on August 24, 2008, at the, at the motion for sanctions evidentiary hearing, which took place all play, all day. Ms. Pham testified at the motion for sanctions. Ms. Pham is, in the motion itself, is cited 40 times, and the notice specifically says Mr. Montgomery and all, and their counsel, the only two counsel of record at that point in time were Ms. Pham and Ms. Klar. So in terms of notice, and I believe there's a body of case, cases out there, which says that just due process is satisfied just by... I'm confused. Is that question in front of us? Did you appeal that? No, we didn't cross-appeal. Yeah, so why is that question in front of us? I was just responding to Judge Rollins' question, Your Honor. Okay. Did you all go through the circuit mediation process for this case? No, but we said we would. But then, for whatever reason, it was never done. But when we filed out, when we filed the mediation questionnaire, we agreed to it, Your Honor. So I would just, I'd invite the Court, in summary, to look at the excerpt of the record involving Judge Cook's order at page 82 going on over to 83. That would show the Court that this appeal is premature, because there's so much more to the record that went into these sanctions that is not before the Court. And the reason it's not before the Court is because what the appellants have done is they've tried to narrow the... You know, I just don't see that. This is, in the form in which the appellants are trying to present it to us, this is a relatively clean question. It does not have to do with what the underlying merits of what the magistrate judge did. The question is, what authority does the magistrate judge have to determine fees under 1927? What authority does the magistrate judge have to determine other forms of sanctions? What actually happened that might warrant attorneys' fees or might warrant the other sanctions? That's not on the table in front of us. In that perspective, Your Honor, I agree. But there are challenges in the appellant's statement of facts which do not conform to the record in order to bootstrap their argument with regard to the lack of authority of the magistrate judge. So if the Court were to really get into the record with regard to the authority of the magistrate judge, the Court would be getting into what actually happened in front of the magistrate judge with regard to the authority issue. I see. With regard to what's contempt, in other words. That goes to the contempt argument. Correct, Your Honor. Does that go to the 1927 argument? No. I think the 1927 fees argument can be narrowly dealt with, as the Court indicated. But it goes to some of these other issues that Judge Cook issued the sanctions on based on the entire pattern of conduct before. Now, did Judge Cook differentiate between conduct that occurred in front of her and what was in front of her with respect to the non-fee sanctions? Judge Cook delineated in detail where the conduct occurred and what was in front of her and what was not. Right. But my question is a little different, and I guess I didn't quite make it clear. I'm not reproaching you. It's my question. But in terms of her authority to enter her sanctions order, did she differentiate and say, well, this occurred to me in front of me, therefore, I have the power to sanction. This did not occur in front of me, and therefore, I don't have the power to sanction. I don't recall that she said that in her order. I don't think she said precisely what the Court is referencing. What she did do is she referenced the Nevada Rules of Professional Conduct that had been violated by the Nevada Rules of Professional Conduct that had been violated by Ms. Clark and Ms. Sampson in connection with her and the facts that were before her. Whether she did precisely what the Court is questioning in terms of dividing up fees, I would probably say no. I'm not saying fees. I'm not talking about fees. I'm talking about the non-fee sanctions. Dividing up between the fees and the, for example, the community service sanctions. No, you didn't. You still haven't understood the question. I'm speaking only about the non-fee sanctions. And I take it as established law that a magistrate judge has the authority to punish contempt that took place in front of that magistrate judge, treating for the moment the non-fee sanctions as deriving from her power to punish contempt. What I'm trying to figure out is whether the magistrate judge said, well, I can punish this because it all took place in front of me, or she said, I can punish some of this because it took place in front of me, but some didn't. And as I read the magistrate judge's order, she did not perform that exercise. I agree with you. Okay. So I would simply leave the Court with the final thought that the appeal is premature. I think the Court somehow, rather than a one-line order, which the Court often does on motions to dismiss with a citation of a case, I think the Court needs to deal with some of these issues. But I submit to the Court respectfully it should deal with it in the context of lack of jurisdiction. Thank you. Thank you. Well, we ran you a little bit over where you intended, and we ran your co-counsel a little bit over where he intended. Why don't we give you five minutes? Thank you, Your Honor. I want to address the issue that the Court seems to be focused on, which is whether the magistrate judge could have issued these sanctions under 1927. And I think we need to back up and look at it from the perspective that's been laid out by the Supreme Court in Bagwell, and also this Court in Hanshaw, which is that you have — labels are not important. You have to look at what the effect is, what is the substance of these sanctions. And when you step back and look at that, even if you only want to focus on the attorneys' fees portion of this, which it seems like that's what the Court would like us to respond to, that these — the magistrate judge and the district judge both describe these as considerable, substantial sanctions. These are — based on how much is at issue here, this isn't — this is something that should be looked at from a perspective of something in which the district judge needs to do de novo fact-finding rather than have just a clear-error review from the magistrate judge. This — the other important issue is that the magistrate judge issued these sanctions jointly and severally. She attributed the liability amongst the different sanction parties, and then she issued joint and several liability order, which in effect meant that for my client was responsible for only 10 percent, but then had to — was going to be responsible for an extra $180,000 in sanctions above that which would — the magistrate judge determined she was responsible. Those, I think, fall well within the serious penalties provisions that are described in the various cases that I just discussed, such that this would bump this out of the hands of the magistrate judge, either as — because they're criminal contempt penalties. When you look at the actual sanctions themselves, the penalties are such that the magistrate judge simply couldn't — doesn't have the authority to do this under Section 636. So I think that whether it's 1927 or some other authority, because of the nature of how — what's at stake and how much was at stake, that these are serious enough that if Congress wanted to give this sanctioning authority to the magistrate judge, Congress would have done so. And the fact that this kind of authority is not in Section 636, the Court must, in order to protect the rights of my client from not having to be hailed in front of a magistrate judge to whom she didn't consent to have jurisdiction, to have to appear before a magistrate judge and be subject to these types of sanctions. And the reason for this is — is if you — if you look at — you have Rule 11, you have Rule 37. Both of those rules — actually, just looking specifically at Rule 37, there's procedural safeguards, and there's procedural safeguards in Rule 11 as well. And I — and while this Court may have talked about Rule 11 sanctions as being nondispositive, I think the facts of those cases, the Masonville case in particular, is distinguishable. I mean, the decision itself is — is based specifically on the facts presented. And the amount at issue was far less than what we're talking about here. And in fact, a subsequent case looking at that, the Rivera-Guerrero case, looked at, again, the effect of the sanctions. And here the effect is great. And this has had a tremendous professional, financial, personal toll on my client and Mr. Goodhart's client, and such that the labels here are — you have to look beyond them and look at what is actually at issue. And this is — I think what might be helpful for the Court to look at is Judge Cabranes' concurring opinion in the Coyble case, where he talks about this in the Rule 11 context. And he was struggling with it in the Rule 11 context, and we're talking about it in the 1927 context, in which there are no procedural safeguards. There's nothing there. And this — it's one of those situations that's particularly subject to abuse and why the district court should have — should not be reviewing the magistrate judge on a nondispositive matter. This is a dispositive matter on which the district judge should be reviewing de novo, doing his own fact-finding, and not giving his Article III authority to a non-Article III magistrate judge. I have just a few more seconds. And I think that with regard to what Mr. Flynn raised, that the — his points with regard to the facts are not supported by the record. He's looking at the magistrate judge's order and not at the underlying record itself. And the magistrate judge did not differentiate between conduct that occurred before her and not before her. And I think that the record shows that these attorneys were being sanctioned for conduct that occurred elsewhere and other forms. And I appreciate the Court's time. Roberts. Okay. Thank you very much. If may, I ask you the same question I ask opposing counsel. Are you amenable to mediation of this case with the Circuit Mediation Office? Yes. And I believe all of the parties filed mediation statements. And for whatever reason, the Mediation Office did not choose this. Well, we apologize. That may have been an oversight on our part. But this might be a good case to explore mediation. So if both parties are willing, we'll talk among ourselves. And we may defer a resolution if the judges agree that mediation might be fruitful. Okay. Now, Mr. Goodhart, mediation would be all right with your client as well? It will, Your Honor. Okay. Thank you very much for your arguments. The case is now submitted for decision. Thank you, Judge Wright. Thank you. Thank you, Judge Wright. We'll see or hear from you in the other room. All right. All rise.
judges: Fisher, Rawlinson, Cjj Wright (C. Cal.), Dj